498 So.2d 935 (1986)
THE FLORIDA BAR, Complainant,
v.
Richard G. NEWHOUSE, Respondent.
No. 66642.
Supreme Court of Florida.
December 11, 1986.
*936 John F. Harkness, Jr., Executive Director, and John T. Berry, Staff Counsel, Tallahassee; and Jacquelyn Plasner Needelman, Bar Counsel, Fort Lauderdale, for complainant.
Richard G. Newhouse, Ft. Lauderdale, in Pro Per.
PER CURIAM.
The Florida Bar filed a five-count complaint against Richard G. Newhouse, a member of the bar. After a hearing, the referee recommended that Newhouse be found guilty of violating disciplinary rules 1-102(A)(1) (violation of a disciplinary rule), 7-106(C)(1) (referring to irrelevant or unsupported matters before a tribunal), and 7-108(D) (improper communication with jurors). The charges arose from Newhouse's conduct while representing his clients in a personal injury suit. The referee found that Newhouse made the following statement during his closing argument: "I have a responsibility, also, a legal and moral one. I already had one client commit suicide and it is a terrible feeling." Nothing in the record indicated that Newhouse's client was suicidal or otherwise justified such a wild statement. Moreover, testimony revealed that this comment had a significant impact upon the jurors. The referee also found that after the close of trial Newhouse contacted three members of the jury, without first obtaining leave of the trial judge as required in Florida Rule of Civil Procedure 1.431(g), and questioned them concerning why the jury decided against his clients.
In light of these findings, the referee recommended that Newhouse be found guilty on two counts and ordered a second hearing to consider sanctions. Following this separate hearing, the referee issued a supplemental report in which he stated that Newhouse's conduct "involved deliberateness and intent" and recommended that Newhouse receive a public reprimand. Newhouse does not dispute the referee's findings or the recommended discipline.
Jury verdicts have traditionally been afforded great sanctity. The public policy of this state has long been to hold jury deliberations and verdicts inviolate. Sentinel Star Co. v. Edwards, 387 So.2d 367,(Fla. 5th DCA 1980), review denied, 399 So.2d 1145 (Fla. 1981); Kirkland v. Robbins, 385 So.2d 694 (Fla. 5th DCA 1980), review denied, 397 So.2d 779 (Fla. 1981); Velsor v. Allstate Insurance Co., 329 So.2d 391 (Fla. 2d DCA), cert. dismissed, 336 So.2d 1179 (Fla. 1976). Accordingly, courts are reluctant to allow the questioning of jurors concerning their reasoning processes and motives. One of the many reasons underlying this policy has been the prevention of unnecessary juror harassment. The post-trial questioning of jurors concerning the thought processes, calculations, or judgments involved in jury deliberations can only serve to hamper the effective administration of justice. See Marks v. State Road Department, 69 So.2d 771 (Fla. 1954).
A narrow exception to this policy arises where matters extrinsic to the verdict are involved, such as where improper contact with a juror has occurred, or where the jury arrived at its verdict by quotient or lot. Velsor, 329 So.2d at 393. This exception is set out in Florida Rule of Civil Procedure 1.431(g), which requires a party who believes legal grounds exist for questioning jurors to file a motion with the trial *937 court. After notice and a hearing, the trial judge determines whether the interviews should be allowed. The rule is not intended to authorize "broad hunting expeditions or fishing excursions." National Indemnity Co. v. Andrews, 354 So.2d 454, 456 (Fla. 2d DCA), cert. denied, 359 So.2d 1210 (Fla. 1978). Disciplinary rule 7-108(D) mandates that an attorney who believes he has legal grounds to question a juror shall scrupulously follow the procedure set forth in ethical consideration 7-29. One of the essential requirements of this ethical consideration is that attorneys must avoid either embarrassing the juror or influencing his or her action in any subsequent jury service.
In the case at bar Newhouse acknowledged his awareness that no legal grounds justified questioning the jury. Nevertheless, he deliberately circumvented the explicit requirements of the rules. The referee's report shows that each of the jurors Newhouse contacted about the deliberational process thought there was something unethical about Newhouse questioning them. Indeed, the foreman testified that the questioning upset her to the point that, probably, she would never again want to serve as a juror. This result is precisely what the rules seek to prevent.
Securing citizens for jury service is a difficult task under the best of circumstances. Failing to discipline attorneys who subject jurors to a post-verdict interrogation without leave of the court and without any legitimate legal ground can only serve to embarrass jurors and ultimately undermine our legal system by making fearful those citizens who otherwise would be willing participants in one of our most cherished democratic institutions. Indeed, we questioned the sufficiency of the recommended public reprimand in light of Newhouse's serious transgressions. Thus, pursuant to article XI, rule 11.09(3)(f) of the integration rule, we ordered the parties to submit briefs concerning the appropriate discipline in this case. In light of the bar's brief submitted pursuant to our order, however, we now adopt the uncontested referee's report and approve the recommended discipline.[*] Publication of this opinion in the Southern Reporter shall serve as Newhouse's public reprimand. Judgment for costs in the amount of $1,106.47 is hereby entered against Newhouse, for which sum let execution issue.
It is so ordered.
McDONALD, C.J., and ADKINS, BOYD, SHAW and BARKETT, JJ., concur.
EHRLICH, J., concurs in part and dissents in part with an opinion, in which OVERTON, J., concurs.
EHRLICH, Justice, concurring in part and dissenting in part.
I concur in that portion of the Court's judgment approving the referee's recommendation of guilt. Because of respondent's knowing and willful violation of Disciplinary Rule 7-108(D), the Court questioned the sufficiency of the recommended public reprimand and ordered the parties to submit briefs as to the appropriate discipline in this case. The bar felt that a public reprimand was adequate and the Court is obviously now content that such is the appropriate discipline.
I feel otherwise because of the very nature of and the deliberateness of respondent's actions which have been very well articulated in the Court's opinion. I am of the view that in addition to a public reprimand, respondent should be placed on probation for one year and be required to pass the Multistate Professional Responsibility Examination. See The Florida Bar v. Peterson, 418 So.2d 246 (Fla. 1982).
OVERTON, J., concurs.
NOTES
[*] Although Newhouse also submitted a brief pursuant to our order, that brief was stricken for lack of timeliness on September 15, 1986.