616 So.2d 41 (1993)
THE FLORIDA BAR, Complainant,
v.
Arthur B. STARK, Respondent.
Nos. 76406, 76819.
Supreme Court of Florida.
April 1, 1993.
John F. Harkness, Jr., Executive Director and John T. Berry, Staff Counsel, Tallahassee, and Jacquelyn P. Needelman, Bar Counsel, Miami, for complainant.
Paul A. Louis and Evan J. Langbein of Sinclair, Louis, Heath, Nussbaum & Zavertnik, P.A., Miami, for respondent.
PER CURIAM.
These are consolidated lawyer disciplinary actions in which the referee found misconduct on the part of the respondent, Arthur B. Stark, and recommended a two-year suspension. The Florida Bar petitions for review and asks that we disbar the respondent. For the reasons expressed, we increase the referee's recommended discipline and suspend the respondent for three years.
After hearing these two cases jointly, the referee issued a report which reflected the following facts.

Case No. 76,406
Stark was retained by Bert Friedman, a longtime client, to handle the collection of court reporting fees owed to Friedman. During this representation, Stark failed to remit $8,466.29 in collected funds to Friedman. Instead, Stark used this money for his own purposes. Friedman was eventually paid the $8,466.29 from the Bar's Clients' Security Fund.
Subsequently, the Bar audited Stark's trust account records. The audit reflected that Stark knowingly used clients' funds for purposes other than those for which the funds were entrusted,[1] that he knowingly used clients' funds for his own use and to satisfy unrelated liabilities, that his trust account liabilities exceeded the funds available, *42 and that he had checks dishonored on his trust account due to insufficient funds. As of November 14, 1989, Stark's trust account reflected a shortage of at least $17,066.29. The evidence additionally reflected that Stark failed to maintain the minimum required trust accounting records.

Case No. 76,819
As a result of the above misconduct, this Court issued an order in case number 75,828 temporarily suspending Stark from the practice of law effective May 25, 1990, under which he currently remains suspended. The Bar filed a Petition for Rule to Show Cause in this case seeking to have Stark held in contempt for allegedly violating the suspension order and seeking to have Stark disbarred. Upon review, the referee found that Stark violated the order of suspension by: 1) continuing to maintain office signs listing him as an attorney; 2) continuing to have his attorney business cards displayed on his desk; 3) continuing to practice law (without compensation) by appearing in court and arguing on behalf of a client on two occasions and by filing pleadings and motions in a Dade County Circuit Court case; 4) failing to advise the Dade County court that he had been suspended from the practice of law; 5) failing to timely notify his clients and banks in writing of his suspension; and 6) failing to timely provide the Bar with documentation regarding the required notification of his suspension to his clients and banks and the required information regarding funds or property belonging to clients that were being held by him in trust.
Based on these facts, the referee recommended that Stark be found guilty in case number 76,406 of violating the Integration Rule of The Florida Bar, article XI, Rules 11.02(3)(a) (commission of any act contrary to honesty, justice or good morals), 11.02(3)(b) (commission of a crime), and 11.02(4) (using funds entrusted for a specific purpose or for a purpose other than that for which it was entrusted), and of violating Rules Regulating The Florida Bar 3-4.3 and 3-4.4 (commission of an act unlawful or contrary to honesty and justice and commission of a crime), 4-8.4(b) (commission of a criminal act reflecting on lawyer's honesty, trustworthiness or fitness as a lawyer), 5-1.1 (money entrusted for a specific purpose must be used only for that purpose), and 5-1.2 (trust accounting records and procedures). As to case number 76,819, the referee recommended that Stark be found in contempt of this Court's order of suspension. The referee then found a number of aggravating and mitigating factors before recommending discipline. In aggravation, the referee found dishonest or selfish motive, substantial experience in the practice of law, lack of good faith effort to make restitution, and failure to make restitution. The referee subsequently reported, however, that Stark has now made full restitution to the Clients' Security Fund. In mitigation, the referee found that Stark: 1) had no prior disciplinary record; 2) suffered from personal or emotional problems because he was caring for his mother; 3) had attempted to rectify the consequences of his misconduct; 4) had made full and free disclosure to the disciplinary board and had a cooperative attitude; 5) had good character and a good reputation; and 6) was remorseful. Most notably, eleven attorneys, six circuit court judges, two judges of the Third District Court of Appeal, one federal judge, one retired county court judge, and one general master testified as to Stark's good character.
After making these findings, the referee recommended that Stark be suspended from the practice of law for two years effective May 25, 1990, the date of Stark's temporary suspension, with readmission to the Bar premised upon proof of rehabilitation and appropriate supervision. Additionally, the referee recommended that Stark be taxed costs in the amount of $3,690.55.
The Bar now contests the referee's recommended discipline and seeks to have this Court disbar Stark. In support of this request, the Bar states that Stark knowingly and intentionally misappropriated clients' funds and that he knowingly practiced law subsequent to being suspended. In the Bar's view, these are serious offenses, representing cumulative misconduct. *43 Moreover, the Bar asserts that none of the mitigating factors found by the referee justify Stark's behavior and that this Court has consistently disbarred attorneys for similar misconduct. Consequently, according to the Bar, disbarment is the only appropriate sanction.
As we stated in The Florida Bar v. Neu, 597 So.2d 266, 269 (Fla. 1992):
Discipline for unethical conduct must serve three purposes: First, the judgment must be fair to society, both in terms of protecting the public from unethical conduct and at the same time not denying the public the services of a qualified lawyer as a result of undue harshness in imposing a penalty. Second, the judgment must be fair to the respondent, being sufficient to punish the breach of ethics and at the same time encourage reformation and rehabilitation. Third, the judgment must be severe enough to deter others who might be prone or tempted to become involved in like violations.
In applying this standard for imposing discipline in cases involving trust account violations, we have frequently noted that the misuse of clients' funds is one of the most serious offenses that an attorney can commit. The Fla. Bar v. McIver, 606 So.2d 1159, 1160 (Fla. 1992); The Fla. Bar v. MacMillan, 600 So.2d 457, 459 (Fla. 1992); Neu, 597 So.2d at 269; The Fla. Bar v. Schiller, 537 So.2d 992, 993 (Fla. 1989). Further, when clients' funds have been misused, the extreme sanction of disbarment is the presumed discipline. McIver, 606 So.2d at 1160; MacMillan, 600 So.2d at 459. However, as we noted in MacMillan, various mitigating factors can rebut this presumption. Id. at 460.
Here, as part of the mitigating circumstances found by the referee, we note that Stark is a sixty-five-year-old attorney who has practiced law for almost forty years with, until now, an unblemished record. The Fla. Bar v. Crowder, 585 So.2d 935 (Fla. 1991) (referee properly considered age of attorney (71), years as a member of the Bar (38 1/2), and prior record in mitigation). Additionally, unlike the respondents in cases where we have determined that disbarment is the appropriate sanction, Stark has now made full restitution, has shown significant remorse, and, based on the record and the testimony of the twenty-two character witnesses who testified on his behalf, is a suitable candidate for rehabilitation. Given the circumstances of this case, we find that a three-year suspension is appropriate to fulfill the aforementioned purposes of discipline.
Accordingly, we approve the referee's recommendation as to guilt but increase the referee's recommended discipline of a two-year nunc pro tunc suspension, to a three-year nunc pro tunc suspension. We hereby suspend Arthur B. Stark from the practice of law for three years, nunc pro tunc May 25, 1990, the effective date of Stark's temporary suspension. After completion of the three-year suspension, he may be readmitted to the practice of law after proof of rehabilitation. Upon readmittance, Stark shall be subject to a two-year period of probation during which his trust account will be subject to quarterly audits by the Bar. Additionally, before readmittance, Stark must complete a minimum of three hours of seminars on trust-accounting procedures given by The Florida Bar's Law Office Management Advisory Service and must pass the legal ethics portion of The Florida Bar examination. Stark shall bear the expense of both the seminars and the audits. Judgment for costs in the amount of $3,690.55 is hereby entered against Stark, for which sum let execution issue.
It is so ordered.
BARKETT, C.J., and OVERTON, McDONALD and SHAW, JJ., concur.
HARDING, J., dissents with an opinion, in which GRIMES, J., concurs.
KOGAN, J., recused.
HARDING, Justice, dissenting.
I respectfully dissent. The Respondent's conduct warrants disbarment and any other sanction would be inconsistent with this Court's actions regarding similar conduct. *44 See The Fla. Bar v. Simring, 612 So.2d 561 (Fla. 1993); The Fla. Bar v. Graham, 605 So.2d 53 (Fla. 1992); The Fla. Bar v. McClure, 575 So.2d 176 (Fla. 1991); The Fla. Bar v. Shanzer, 572 So.2d 1382 (Fla. 1991); and The Fla. Bar v. Gillis, 527 So.2d 818 (Fla. 1988).
The majority correctly states the rule governing discipline for unethical behavior, majority opinion at 43, but apparently ignores the standard in reaching its inexplicable result. In fact, two of the factors relied on by the majority to justify its sanction could have been used to aggravate the Respondent's punishment. For example, the Referee found lack of good faith to make restitution and failure to make restitution as an aggravating factor. The Respondent evidently made restitution after the Referee issued his report, recommending restitution be made within ninety days. The majority now considers this restitution as a mitigating factor. While restitution is commendable, we have never considered restitution made after a referee's report to be sufficient mitigation to overcome the presumed sanction of disbarment. The majority here opens a window of opportunity for those who misappropriate funds to transform an aggravating factor (failure to make restitution) into a mitigating factor (making restitution) after the referee makes a finding that restitution should be made.
Also, the majority seems to ignore that while the referee found Respondent's lack of disciplinary record and practice of law since 1951 to be mitigating factors, he also found Respondent's substantial experience in the practice of law to be an aggravating factor. Clearly, the Respondent's untimely restitution and his length of practice and lack of disciplinary record are not sufficient to be used as mitigating factors to support the majority's conclusion.
Disbarment is presumed to be the appropriate sanction whenever the misuse of a client's funds results in a disciplinary proceeding. The Fla. Bar v. Shanzer, 572 So.2d 1382, 1383 (Fla. 1991). Although this presumption can be overcome by a showing of sufficient mitigating factors, the mitigating factors recited by the majority in this case have not been sufficient to override the disbarment presumption in the past. In Shanzer, this Court found the mitigating factors of full cooperation, rehabilitation, remorse, payment of restitution, and emotional problems to be insufficient to overcome the disbarment presumption. Id. The majority now appears to retreat from that rule by finding the factors here sufficient to overcome the presumption of disbarment.
Given the similarity between this case and others in which disbarment was considered the appropriate sanction, I am unwilling to agree with the majority that a three-year suspension is sufficient. Applying the standards recited by the majority to the facts of this case leads me to the conclusion that the Respondent should be disbarred.
GRIMES, J., concurs.
NOTES
[1] Specifically, Stark used a $7,000 real estate deposit that had been entrusted to him by Mr. and Mrs. Thomas Smith. Stark used this money without the knowledge or authorization of Mr. and Mrs. Smith.